UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------X
DARWIN ROQUE,

                            Petitioner,

                                                        **MEMORANDUM AND ORDER**

                - against -                              12-CV-1698 (RRM)

WILLIAM LEE, Superintendent,

                            Respondent.
-------------------------------------------------------X
ROSLYNN R. MAUSKOPF, United States District Judge.

    Petitioner Darwin Roque brings this petition for a writ of habeas corpus pursuant to 28

U.S.C. § 2254, challenging his November 15, 2006, conviction for murder in the second degree

and criminal possession of a weapon in the fourth degree in New York State Supreme Court,

Queens County.  (Pet. (Doc. No. 1.) at 1.)  Roque advances seven grounds in support of his

petition, including claims that he received ineffective assistance of counsel and was denied a fair

trial due to the prosecutor's inappropriate remarks throughout the proceeding.  (*Id.* at 5–16.)

Respondent William Lee ("Respondent" or "the State") opposes the petition, arguing that each of

these grounds is unexhausted and procedurally barred, without merit, or both.  (Resp't's Mem.

(Doc. No. 10).)  For the reasons set forth below, the petition is dismissed.

## BACKGROUND

I.    **The Crime**

    On the night of December 20, 2003, a man repeatedly stabbed seventeen-year-old Wilson

Argudo in the chest while the two were in the vicinity of 89th Street and Roosevelt Avenue in

Queens.  Argudo died soon after from his injuries.  In the immediate aftermath of the assault, the

police encountered Roque near the crime scene and recovered from him a butterfly knife with

Argudo's blood on it.  Roque was subsequently indicted for murder in the second degree and criminal possession of a weapon in the fourth degree.

## II.    The Trial

### A.    The Evidence

Roque's trial lasted for three weeks, from October 2006, to November 15, 2006, with Justice Randall Eng presiding.  (Trial Tr. (Doc. Nos. 11-2, 11–3, 11–4, 11–5, 11–6, 11–7, 11–8) at 1.)[1]  The People, represented primarily by assistant district attorney Kenneth Applebaum, called fourteen witnesses; the defense, represented primarily by Ernest Hammer, called thirteen witnesses, including Roque himself; and the parties collectively introduced dozens of exhibits into evidence.  (*Id.* at 1675–76.)

The primary issue at trial was whether Roque and his brothers – who were with him on the night in question – or Argudo's friends were telling the truth about what happened on December 20, 2003, between approximately 9:30 pm, just before the fatal altercation broke out, and 10:30 pm, when police recovered the murder weapon from Roque.  DNA and forensic evidence was not in dispute, nor were many of the facts pertaining to what transpired before 10:00 pm.

In 2003, Roque owned and operated a pet store in the Jackson Heights neighborhood of Queens.  (*Id.* at 1088–89.)  At approximately 8:00 pm on the night in question, he and two of his brothers, Kilson and Erwin, closed the store and headed in the direction of their car, walking southbound down 89th Street.  (*Id.* at 678–83, 714, 1085, 1107–09, 1112.)  Between 37th Avenue and Roosevelt Avenue, they encountered a group of men, who attempted to rob them.  In

---

[1] For citations to the trial record and the sentencing proceeding, page numbers correspond to the original transcript, not ECF pagination.  For all other citations to court documents, page numbers correspond to ECF pagination.

the melee, Roque sustained an injury to his face, and the assailants made off with Erwin's jacket, which contained $800 and the keys to the pet store. (*Id.* at 73, 682–83, 1134–35.)

Immediately after the fight, Erwin located some nearby police officers and brought them to an area near the crime scene, where they found Roque waiting. (*Id.* at 73, 684, 1137.) Three of the officers testified that Roque was "visibly upset." (*Id.* at 73, 227–29, 965–70.) Roque and his brothers testified that he was calm. (*Id.* at 685, 723–24.)

The officers placed Roque and his brothers in the back of their car and proceeded to canvass the vicinity. During the canvass, the brothers identified two individuals, who were promptly arrested and transported to the 110th Precinct. (*Id.* at 75, 687–88, 1140–42.) There, Roque and his brothers gave statements to the police before leaving the precinct at approximately 9:30 pm. (*Id.* at 692, 1152, 1154, 718–19, 986.) Accounts of what happened next sharply diverge.

According to the People's witnesses, at around 10:00 pm, Argudo and three of his teenage friends, Isias Ortiz, Francisco Valle, and Jennifer Burdier, met near the corner of 89th Street and Roosevelt Avenue with plans to walk together to a nearby house party. (*Id.* at 281–82, 498–99.) Once together, Argudo, who was severely intoxicated, told the others he no longer wished to go to the party. (*Id.* at 283, 288.) As the teens debated what to do, a group of men rounded the corner onto Roosevelt Avenue. According to Ortiz and Valle's identifications both immediately after the crime and at trial, Roque was among the group. (*Id.* at 284, 287, 502–03.) Burdier was unable to make a positive identification, but she testified at trial that Roque "looked like" one of the men. (*Id.* 449–50.)

As the men approached, one of them yelled, "that's them," and they descended upon the teenagers. (*Id.* at 285.) Some of them pushed Valle against a building and brandished a knife

3

before being informed by a companion, "It's not him, it's not him." (*Id.* at 440, 502–03, 575.)
The men then turned their attention to Argudo. (*Id.* at 503.) Valle testified that Roque and one
of the other men grabbed Argudo and "slammed" his back against a parked car, and that Roque
then made a "punching motion" with his right arm towards Argudo's chest while the other man
held him. (*Id.* at 503–05.) Ortiz testified that he, too, observed the "punching motion," though
he described Argudo as lying on his back on the ground. (*Id.* at 287.) Burdier testified that she
observed Roque "get on" Argudo, pull out a "metal" "shining" object, and move his hand "in
and out in and out of him." (*Id.* at 441–42.)

In an effort to help Argudo, Valle attempted to put Roque in a headlock, but he was
quickly thrown off by some of the other men. (*Id.* at 286–87, 506.) At around the same time,
one of the other men, who was fighting with Ortiz, yelled that the police were coming and ran
away back up 89th Street toward 37th Avenue. (*Id.* at 286.) Ortiz then also attempted to stop
Roque, grabbing at his shoulder. (*Id.* at 289.) Roque warned, "I have a blade," and then he
broke free of Ortiz's grasp and ran, along with the remaining men, back up 89th Street. (*Id.* at
289, 506.)

Past any immediate danger, Burdier ran for help while Ortiz and Valle turned to check on
Argudo. (*Id.* at 444.) Argudo informed the two boys that he had been stabbed, which they
confirmed for themselves when they opened his jacket and observed blood on his chest. (*Id.* at
289–92, 507–08.) They encouraged Argudo to walk but, after helping him go several paces, they
realized he was too weak to continue. (*Id.* at 508.) Leaving Argudo, Ortiz and Valle ran up 89th
Street toward 37th Avenue, following their assailants' path of retreat. (*Id.* at 293, 509.) When
they reached 37th Avenue, at approximately 10:30 pm, they saw Roque standing next to a police
car parked across the street. (*Id.* at 231, 509.)

The defense presented a very different version of what transpired during this hour. According to Roque and his brothers, after leaving the 110 Precinct at around 9:30 pm, they walked a few short blocks to their home and then did not see each other again that evening. (*Id.* at 1157–58, 719, 700.) Kilson remained at home. (*Id.* 719.) Erwin went to Manhattan by himself. (*Id.* at 706.) And Roque, who had by now realized that the keys to the pet store had been stolen along with Erwin's jacket, embarked for the pet store with a plan to change the locks. (*Id.* at 1167.) Despite being assaulted and robbed on 89th Street less than two hours earlier, he proceeded alone, unarmed, and on foot along a route that took him back to the crime scene. (*Id.* at 1389–93.)

Roque testified that, when he reached the corner of 89th Street and Roosevelt Avenue, he encountered a teenager, Ortiz, whom he recognized from the robbery. (*Id.* at 1174–75.) He believed Ortiz, along with the men already arrested for robbing him, was a member of the Crips gang. Upon seeing Roque, Ortiz yelled, "that's the guy from the pet shop," whereupon Roque was knocked down from behind by an unknown man. (*Id.* at 1175.) This man then attempted to punch Roque with something metallic in his hand but, before the blow fell, he was pushed away by an unknown third person and dropped the metallic object. (*Id.* at 1176.) Seizing his opportunity to escape, Roque grabbed the object and ran northbound up 89th Street toward 37th Avenue. (*Id.*)

From here, the prosecution and defense narratives mostly reconverge. Once at the intersection of 89th Street and 37th Avenue, Roque dialed 911 and reported that he had been jumped a second time. (*Id.*) He then noticed a police cruiser parked on the opposite side of 37th Avenue, which he approached. (*Id.* at 1177, 1179.) Upon reaching the cruiser, he presented the object to an officer seated inside, who informed him it was a knife. (*Id.* at 1177.)

5

Ortiz and Valle arrived next, and other NYPD personnel began to appear on the scene. As the parties crowded the police vehicle, each accused the other of committing a stabbing. (*Id.* at 294–95, 510–11, 1179.) According to Sergeant Claudia Bartolomei and Detective Antoin Malloy – both of whom were present – Roque told them that he had recovered the knife from Ortiz, who had stabbed "his friend." (*Id.* at 157, 159, 236.) According to Roque, he never identified Argudo as his friend. (*Id.* at 1180–81, 1199.) In either event, the police, some of whom recognized Roque as the victim from earlier that evening, believed Roque's accusations. Several of the officers handcuffed the teenagers and brought them to the precinct. (*Id.* at 295, 511.)

Meanwhile, Sergeant Bartolomei, Detective Malloy, and others placed Roque in a car and took him back to the crime scene, intending to do a "show up" to verify that Argudo recognized Roque as his friend. (*Id.* at 236.) When they arrived, they discovered Argudo was now unconscious and receiving urgent care from EMTs. (*Id.* at 1180–81.) When Sergeant Bartolomei asked whether Roque recognized Argudo, he said that he did not. (*Id.*) According to Sergeant Bartolomei only, Roque became pale and backed away as he said this. (*Id.* at 237.) Upon seeing this reaction, and after a brief deliberation with other officers, she placed Roque under arrest. (*Id.* at 248.)

Shortly thereafter, the EMTs transported Argudo to Elmhurst Hospital, where he died soon after arrival. (*Id.* at 141–43, 212.) An autopsy revealed that he suffered eight stab wounds, two of which perforated his heart. (*Id.* at 350–52, 360–64.) Forensic pathologists for both parties – Dr. Kristin Roman for the prosecution and Dr. Michael Taff for the defense – agreed that Argudo died from multiple stab wounds and massive blood loss, and that the knife recovered from Roque could have caused the wounds. (*Id.* 372, 803–04.) Forensic biologists for both

parties agreed, based on DNA testing, that blood found on the knife was Argudo's.  (*Id.* at 660, 996–97.)

B.    **Conduct of the Attorneys During Trial**

As previously noted, when presenting the foregoing evidence over the course of nearly three weeks, counsel for both parties called numerous witnesses and introduced numerous exhibits.  On a small number of occasions, the prosecutor indulged in sarcasm.  During Ortiz's testimony, in response to Ortiz referring to "[t]he gentleman I was fighting with," the prosecutor asked, "Not a bunch of gentlemen, was it?"  (*Id.* at 286.)  During cross examination of Roque, in reference to Roque's success operating the pet store, he asked, "You can sell a load of goods; right?"  (*Id.* at 1216.)  Later, he asked Roque whether he was "a tough guy."  (*Id.* at 1268.) Adam Massoud, a character witness for Roque, testified that he had no hobbies outside of work. When Massoud later insisted during cross examination that he discussed Roque's reputation for peacefulness once per week, every week, for four years, the prosecutor remarked, "no wonder you don't have any other interests."  (*Id.* at 876–78.)  For his first question to Nicholas Luttinger, the defense's Spanish translation expert who had testified, *inter alia*, about the proper translation of the word "brown," the prosecutor asked, "How much green are you getting for all this brown testimony, sir?"  (*Id.* at 1445.)  Finally, during cross examination of Dr. Taff about the impairing effects of alcohol, he remarked, "I myself think that I become more good looking when I am drunk."  (*Id.* at 921.)

On nearly all of these occasions, defense counsel objected, and the court sustained the objection.  (*Id.* at 286, 876, 1268, 1445.)  In one instance, however, defense counsel joined in the joking.  In response to the prosecutor's comment about looking better when drunk, he replied,

"You must be confused." (*Id.* at 921.) This exchange earned the attorneys a reprimand from the court warning "both sides to refrain from these little asides." (*Id.* at 922.)

### C.    The Summations

#### i.    The Defense

Defense counsel's summation occupies nearly fifty pages of transcript. (*Id.* at 1507–52.) He began by describing Roque as a good, industrious small business owner and Ortiz, Argudo, and their friends as members of the Crips. (*Id.* at 1510–11.) He pointed out evidence that the prosecution was unable to offer, such as Roque's prints on the knife or Argudo's blood somewhere on Roque's clothes. (*Id.* at 1512–1520.) He argued that it made no sense for Roque, had he been guilty, to keep and hand over the knife to the police. (*Id.* at 1520–22.) He pointed to small inconsistencies between the testimony given by some of the officers and within the testimony given by Burdier. (*Id.* at 1530–31, 1548–50.) And he suggested that, just as Roque's brothers had a motive to protect him, so, too, did Ortiz, Valle, and Burdier have a motive to lie on behalf of their gang "family." (*Id.* at 1534–35.)

#### ii.    The People

The prosecutor's summation was approximately as long as defense counsel's. (*Id.* at 1552–98.) He began by summarizing the facts not in dispute and encouraging the jury to focus only on the evidence that would help them answering the question at hand. (*Id.* at 1552–65.) In an attempt to suggest the testimony of Roque's mother was not helpful, he argued, "Everyone has got a mother.  Jeffrey Dahmer had a mother, but that's not evidence of anything." (*Id.* at 1563.) Referring to other defense evidence, he told the jury, "I don't care.  I don't think you should care.  It doesn't matter." (*Id.* at 1565.) Defense counsel objected to this second comment, but not the first. (*Id.* at 1563, 1565.)

Next, the prosecutor discussed the relative credibility of the witnesses. (*Id.* at 1557–58, 1582, 1595.) He attacked Roque's credibility, characterizing his story as "ridiculous," "sloppy," "invented," and marked by convenient "blindness and amnesia." (*Id.* at 1557, 1566, 1579, 1581.) Responding to defense counsel's attacks on the credibility of the People's witnesses, he asked the jury – twice – whether they believed those witnesses "came in here, committed the crime of perjury, [and] risked their careers." (*Id.* at 1559, 1595.) Defense counsel lodged an objection to this question the first time it was asked, which the court overruled. (*Id.* at 1559.)

The majority of the prosecutor's closing was dedicated to highlighting inconsistencies in the defense's version of events and summarizing the strengths of the People's evidence. (*Id.* at 1566–96.) In doing this, he invoked "the truth," telling the jury three times, "There is a truth," (*id.* 1556, 1570, 1597), and characterizing the testimony of three witnesses as either having or not having "the ring of truth," (*id.* at 1558, 1570, 1577). The former comments each appeared as part of longer exhortations to the jury to carefully consider the evidence, such as, "Your job is to find the facts. There is a truth. There is a truth to what happened. And if you say it's too hard, I don't want to do this, then you are not completing your task and fulfilling your oath as sworn jurors." (*Id.* at 1555–56.)

The prosecutor also made a few arguments not clearly supported by the evidence. On three occasions, defense counsel objected to such arguments. (*Id.* at 1580, 1585, 1591.) Although these objections were overruled, the court again reminded the jury that their "recollection . . . controls," and that counsel is not permitted to speculate. (*Id.* at 1580–81, 1591.)

Finally, in closing, the prosecutor sought to describe the law regarding accessorial liability or acting in concert, to which the defense objected. (*Id.* at 1596.) The court overruled

the objection, but he reminded the jury that he would be giving them instructions on the law. When the time came for the charge, the court gave its own acting in concert charge. (*Id.* at 1615–17.) It also repeatedly instructed the jury that the burden of proof beyond a reasonable doubt rested with the People. (*Id.* at 1601–04, 1607, 1622, 1626, 1655.)

### D. The Verdict and Sentence

After just over two days of deliberation, on November 15, 2006, the jury found Roque guilty of both counts charged in the indictment. (*Id.* at 1637, 1664, 1667–1669.) On February 7, 2007, Justice Eng sentenced Roque to an indeterminate term of 23 years to life for second-degree murder and a concurrent determinate term of one year for criminal possession of a weapon. (Sentencing Tr. (Doc. No. 11–7) at 1, 24.)[2]

## III. The Direct Appeal

Roque timely appealed his conviction and sentence to the Appellate Division, Second Department. In his brief, Roque, represented by new counsel, raised four points of error: (1) that the verdict was against the weight of the evidence in violation of New York State law; (2) that "the egregious conduct of the prosecutor throughout the trial, along with the ineptitude of defense counsel, created a circus-like atmosphere in the courtroom, thereby depriving defendant his state and federal constitutional rights to a fair trial"; (3) that the prosecutor's attempt to describe the acting in concert charge to the jury, combined with the court's later instruction that the jury need not be unanimous about his status as an accomplice or principal, deprived Roque of a fair trial; and (4) that his sentence was excessive. (Def.'s Appellate Division Br. (Doc. No. 11) at 1–88.)

---

[2] As noted above, *supra* note 1, citations to the sentencing proceeding use page numbers from the original transcript, not ECF pagination.

Within the second point of error, Roque asserted both that the prosecutor's demeanor and commentary throughout the trial deprived him of his right to a fair trial and that his own trial counsel was ineffective under *Strickland v. Washington*, 466 U.S. 668 (1984).  (*Id.* at 45–70.)  In support of his fair trial claim, he argued that the prosecutor, in his examination of witnesses, (a) used "prejudicial language" such as "claim," "it's your testimony," "according to you," and "you are saying"; (b) improperly suggested that Roque was lying about the facts of the 8:00 pm robbery; (c) improperly questioned Roque about his having filed for bankruptcy in 2002; (d) asked unsubstantiated questions about Roque's care for his daughter; (e) improperly sought to use Roque's testimony to impeach his brothers' testimony; (f) badgered defense witnesses, for example, by commenting to Massoud, "no wonder you have no time to do anything else"; (g) engaged in "overt bickering, side commentary, and interruptions";[3] and (h) improperly tried to ingratiate himself by making jokes, such as asking about how much "green" Luttinger was getting for his "brown" testimony.  (*Id.* at 45–56.)  Although Roque "concede[d] that the issue has not been preserved" because no contemporaneous objection was made, he also challenged the prosecutor's summation, arguing that it (a) improperly featured references to "the truth"; (b) improperly accused Roque and his brothers of lying; (c) impermissibly sought to shift the burden of proof by claiming an acquittal would imply the People's witnesses committed perjury; (d) made prejudicial attacks on Roque, in particular, by comparing him to notorious serial killer Jeffrey Dahmer; and (e) offered his personal opinion that some evidence "doesn't matter."  (*Id.* at 46–65.)

---

[3] Roque did not cite any law to support his argument that the presence of "bickering" and "interruptions" can constitute denial of a fair trial.  And nearly all of his record citations are to passages featuring simple objections and no more.

In support of his ineffective assistance claim, Roque argued that his attorney was ineffective for a litany of reasons which fall into three broad categories.  First, citing very little or not at all to the record, he contended that counsel was generally incompetent and unprepared – that is, he "acted unprofessionally," "did not manifest that he understood the case," "did not appear to understand the rules of evidence," "sought a ruling that would have prejudiced his client," and "engaged in juvenile behavior with the prosecutor in front of the jury."  (*Id.* at 47–50, 56–69.)  Second, he argued that counsel gave an "unconvincing summation" himself by "rambl[ing] along for almost 50 pages, apologizing for not remembering all the details and focusing on irrelevant facts in the case."  (*Id.* at 66, 68.)  Third, he argued that counsel was ineffective because he failed to object to the majority of the prosecutor's many purported improprieties detailed above.  (*Id.* at 46–69.)

With respect to the third point of error, regarding the acting in concert charge and the trial court's subsequent non-unanimity instruction, Roque specifically declined to argue that a jury must "be unanimous on the issue of the defendant's status as an accessory or a principal."  (*Id.* at 73 n.15.)  His argument was more nuanced:  He contended he was deprived of a fair trial because there was a "dilution of [the] People's burden of proof" which had "result[ed] from the prosecutor's 'charge' to the jury on accessorial liability, uncorrected by the trial court . . . coupled with the non-unanimous portion of the court's accessorial liability charge."  (*Id.* at 73–75 & n.15.)

On June 22, 2010, the Appellate Division affirmed Roque's conviction.  *People v. Roque*, 902 N.Y.S.2d 430, 430 (2d Dep't 2010).  It held that the verdict was not against the weight of the evidence, the sentence was not excessive, and defense counsel "provided meaningful representation."  *Id.*  Addressing the fair trial claim, it held that Roque's "contention that he was

deprived of a fair trial by certain remarks made by the prosecutor during summation is unpreserved for appellate review." *Id.* (citing the contemporaneous objection rule). It did not address whether the same was true with respect to remarks made by the prosecutor during the evidence phase of the trial. It added that, "[i]n any event, most of the challenged remarks were fair comment on the evidence, permissible rhetorical comment, or responsive to the defense counsel's summation. To the extent that the prosecutor may have exceeded the bounds of permissible rhetorical comment, any error was harmless." *Id.* (internal quotation marks omitted) (citations omitted). It concluded, "The defendant's remaining contentions either are without merit or relate to harmless error." *Id.*

On July 27, 2010, Roque applied for leave to appeal the Appellate Division's fair trial and ineffective assistance holdings to the New York Court of Appeals. (Application (Doc. No. 11-1) at 38–44.) He also asserted a third point of error, arguing that the Appellate Division could not remark that some contentions "relate to harmless error" without deciding whether they do or don't, in fact, constitute harmless error. (*Id.* at 44.) Citing no case law, he wrote, "There is no such standard for appellate review of a conviction – it is either harmless or it is not. Such a conclusion as to the merits of any issue is entitled to no weight." (*Id.*)

On November 4, 2010, Judge Ciparick denied Roque's application. *People v. Roque*, 939 N.E.2d 816, 816 (N.Y. 2010). Roque did not subsequently petition the United States Supreme Court for a writ of certiorari. Accordingly, on February 2, 2011, his conviction became final.

## IV.    Subsequent Proceedings and the § 2254 Petition

On January 6, 2012, Roque filed a motion for a writ of error *coram nobis* with the Appellate Division, Second Department. In it, he argued that he was denied effective assistance of appellate counsel when his attorney failed to argue that the trial court erred in refusing to

permit the admission of certain evidence connecting Argudo and Ortiz to "gang presence."
(*Coram Nobis* Motion (Doc. No. 11-1) at 57–64.)

Six days later, on January 12, 2012, Roque filed the instant petition, alleging seven grounds for habeas relief. (Pet. at 18–25.) His first three grounds raise fair trial claims. He argues in the first ground that he was denied a fair trial because there was insufficient evidence of guilt – not because the verdict was against the weight of the evidence, as he argued to the Appellate Division. In the second ground, parroting his Appellate Division brief, he argues that the "circus-like atmosphere," including both the prosecutor's conduct and his own counsel's ineffectiveness, deprived him of a fair trial. In the third ground, he challenges the combination of the prosecutor's acting in concert charge and the trial court's non-unanimity instruction, but this time taking the tack he expressly disavowed before the Appellate Division: arguing that these things "negated the proper function of the jury, which is to reach a unanimous verdict." (*Id.* at 21–22.)

In his fourth ground, for the first time, Roque asserts "actual innocence," alleging,

> Prior to the trial, the actual perpetrator of the crime confessed to his attorney and submitted himself to a polygraph test. The attorney arranged for a proffer session between his client and the District Attorney's office (not the trial prosecutor) and they took a sworn statement at that time wherein he claimed full responsibility for the crime . . . . This statement was not turned over to the defense prior to trial, and when the defense asked for a copy during the trial, the Court denied the request . . . .

(*Id.* at 22.) The corresponding pages from the trial transcript, and Roque's subsequent filings, reveal that the person in question was Roque's brother, Marwin, who received use immunity in exchange for his proffer. (*See* Trial Tr. at 1363–70; Third Mot. to Stay (Doc. No. 19) at 6.) The transcript also reveals that, contrary to Roque's assertion, his attorney never requested the proffer

14

statement – instead, he requested a copy of the immunity agreement.  (Trial Tr. at 1366–68.)
After reviewing a copy of the agreement, the trial court denied this request.  (*Id.* at 1368–70.)

In his fifth ground, Roque reiterates the argument made in his application for leave to
appeal that the Appellate Division erred in remarking that some contentions "relate to harmless
error."  (Pet. at 23.)  He argues that "[t]here is no such state or federal appellate standard for . . .
review of a conviction."  (*Id.*)

In his sixth ground, for the first time, he asserts that the court increased his sentence
based on facts not found by the jury in violation of his jury-trial right.  (*Id.*)

Finally, Roque describes his seventh ground as "contain[ing]" claims related to "both a
defendant's constitutional right to effective trial counsel and his right to effective appellate
counsel."  (*Id.* at 24.)  The appellate counsel claim, however, receives no further elaboration here
or anywhere else in the petition.  As for the trial counsel claim, Roque first contends that he was
denied effective assistance for the reasons "more thoroughly addressed" in his direct appeal
briefs.  (*Id.* at 24.)  These reasons comprise the same three broad categories that appear in his
brief to the Appellate Division:  first, defense counsel's "ineptitude" and "lack of understanding
of the key issues in th[e] case"; second, "his confusing summation that did not reveal the flaws in
the People's case" and that "opened the door for some of the prosecutor's improper remarks
during summation"; and third, "his failure to object to the vast majority of the prosecutor's
improprieties."  (*Id.* at 21, 24–25.)[4]  The petition does include a single new allegation, however,
alleging counsel was ineffective for failing "to review the *Rosario* material fully, thus depriving

---

[4] Several of these reasons appear in Roque's second ground, which also raises ineffective assistance arguments.  For
organizational clarity, the Court lists them all here.

himself of the information he needed to effectively" question the two forensic pathologists, Drs. Roman and Taff.  (*Id.* at 25.)

At the time he filed the petition, Roque represented that not all of his claims were exhausted and that he planned to raise several of them in an anticipated postconviction motion pursuant to New York Criminal Procedure Law ("C.P.L.") § 440.10.  (*Id.* at 5, 10, 11.)  He also noted that he was currently pursuing his ineffective assistance of appellate counsel claim through the *coram nobis* motion he had filed just six days earlier.  (*Id.* at 14.)

On March 28, 2012, Roque withdrew his *coram nobis* motion, evidently because his appellate attorney had learned of its existence and lodged a complaint with Roque's mother. (3/28/12 Letter (Doc. No. 11-1) at 70; Second Mot. to Stay (Doc. No. 8) at 2.)  On May 29, 2012, he moved to stay his petition pending review of his case by the Jeffrey Deskovic Foundation for Justice – a nonprofit legal advocacy group that represents the wrongfully convicted.  (First Mot. to Stay (Doc. No. 5) at 1–2.)  He explained that the Foundation had advised him not to file a § 440.10 motion until their review was complete.

By Order dated July 11, 2012, this Court denied Roque's motion.  (7/11/2012 Order (Doc. No. 7) at 2–4.)  The Court noted that "[e]ach of the grounds for his proposed 440 motion are based on facts that he has known or should have known long before bringing this petition, since they occurred either during his trial . . . or before he filed his leave to appeal to the New York Court of Appeals."  (*Id.* at 3.)  Accordingly, the Court explained, any attempt to reassert these grounds in a § 440 proceeding would be unavailing.  (*Id.* at 4.)

 On July 23, 2012, Roque renewed his motion for a stay.  (Second Mot. to Stay at 1–15.) He apprised the court that, in addition to the planned § 440 and the now-withdrawn *coram nobis*, he had an Article 78 request for documents from the NYPD pending in state court.  (*Id.* at 6.)  In

apparent response to the Court's order, he listed several new claims – not appearing in his petition – that he said were based on newly discovered evidence and therefore not barred from review in a § 440 proceeding.  (*Id.* at 7–12.)  In a subsequent filing in support of his motion to stay, Roque stated that the Jeffrey Deskovic Foundation had decided to represent him in his § 440 proceedings.

By Order dated March 12, 2013, this Court again denied Roque's motion to stay. (3/12/2013 Mem. & Order (Doc. No. 23).)  The Court reiterated that the claims in Roque's petition are all founded on the record that was available to him on direct appeal.  It added that, to the extent Roque wished to assert claims based on newly discovered evidence, he had failed to show good cause for his continued failure to actually bring a § 440 motion, reinstate his *coram nobis* motion, or both.  (*Id.* at 4–5.)  The Court concluded, "because petitioner has presented a mixed petition and a stay and abeyance is inappropriate, the Court will permit petitioner to delete the unexhausted claims and to proceed . . . solely with the exhausted claims should he wish to pursue that route."  (*Id.* at 5.)

Roque has not since taken up this invitation to amend his petition.  Nor has he offered any evidence that he has commenced § 440 proceedings or revived his *coram nobis* application.

## DISCUSSION

In its opposition to Roque's petition, Respondent argues that, with the exception of the ineffective assistance of trial counsel claim in grounds two and seven, all of Roque's claims are unexhausted and procedurally defaulted.  (Resp't's Mem. at 26–86.)  The Court agrees that Roque's claims in grounds one, three, five, and six are procedurally barred, but it is not evident whether the same can be said for the prosecutorial misconduct claim stated in ground two.[5]  In an

---

[5] Roque's actual innocence claim in ground four is not cognizable on habeas review as an independent claim.  *See McQuiggin v. Perkins*, 569 U.S. 383, 386 (2013).

abundance of caution, the Court reviews this claim – along with the ineffective assistance claim – pursuant to the Antiterrorism and Effective Death Penalty Act's ("AEDPA") deferential standard, and it concludes that both are without merit.

## I.     Exhaustion and Procedural Default

Federal habeas relief is not available to a prisoner in state custody unless he "has exhausted the remedies available in the courts of the State." 28 U.S.C. § 2254(b)(1)(A); *Jones v. Keane*, 329 F.3d 290, 294 (2003). To exhaust state remedies, "the prisoner must fairly present his claim in each appropriate state court (including a state supreme court with powers of discretionary review), thereby alerting that court to the federal nature of the claim." *Baldwin v. Reese*, 541 U.S. 27, 29 (2004). "A petitioner has 'fairly presented' his claim only if he has 'informed the state court of both the factual and the legal premises of the claim he asserts in federal court.'" *Dorsey v. Kelly*, 112 F.3d 50, 52 (2d Cir. 1997) (quoting *Daye v. Attorney Gen. of N.Y.*, 696 F.2d 186, 191 (2d Cir. 1982) (en banc)). "Specifically, he must have set forth in state court all of the essential factual allegations asserted in his federal petition" and he "must have placed before the state court essentially the same legal doctrine he asserts in his federal petition." *Daye*, 696 F.2d at 191–92 (citations omitted). "The claim presented to the state court, in other words, must be the 'substantial equivalent' of the claim raised in the federal habeas petition." *Jones*, 329 F.3d at 295 (citing *Strogov v. Attorney Gen. of N.Y.*, 191 F.3d 188, 191 (2d Cir. 1999)).

Fair presentation "in each appropriate state court" entails the prisoner "giv[ing] the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999). "In New York, to invoke 'one complete round of the State's established appellate review

process,' a criminal defendant must first appeal his or her conviction to the Appellate Division, and then must seek further review . . . by applying to the Court of Appeals for a certificate granting leave to appeal." *Galdamez v. Keane*, 394 F.3d 68, 74 (2d Cir. 2005) (citations omitted). "By requiring exhaustion, federal courts recognize that state courts, 'no less than federal courts, are bound to safeguard the federal rights of state criminal defendants.'" *Jones*, 329 F.3d at 294 (quoting *Daye*, 696 F.2d at 191).

"The procedural default doctrine protects the integrity of the exhaustion rule." *Galdamez*, 394 F.3d at 73 (citing *Edwards v. Carpenter*, 529 U.S. 446, 452–53 (2000)). "When a prisoner has deprived the state courts of . . . an opportunity" to pass on his federal claims, "he has procedurally defaulted [those] claims." *Id.* (citation omitted). The doctrine also protects the integrity of state procedural rules. *See Pierotti v. Walsh*, 834 F.3d 171, 176 (2d Cir. 2016). Thus, even though a federal claim may have been fairly presented to each appropriate state court, it will be procedurally defaulted if the judgment of the state court "rests on a state-law ground that is both 'independent' of the merits of the federal claim and an 'adequate' basis for the court's decision." *Harris v. Reed*, 489 U.S. 255, 260 (1989). "A state court decision is 'independent' when it 'fairly appears' to rest primarily on state law." *Smalls v. Lee*, No. 12-CV-2083 (KMK) (LMS), 2016 WL 5334986, at *6 (S.D.N.Y. Sept. 22, 2016) (quoting *Jimenez v. Walker*, 458 F.3d 130, 138 (2d Cir. 2006)). "A decision is adequate if it is firmly established and regularly followed by the state in question." *Id.* (internal quotation marks omitted) (quoting *Garcia v. Lewis*, 188 F.3d 71, 77 (2d Cir. 1999)). When a claim is procedurally defaulted, habeas review will be barred "unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." *Coleman v. Thompson*,

19

501 U.S. 722, 750 (1991); *see also Wainwright v. Sykes*, 433 U.S. 72, 87 (1977); *Ramirez v. Attorney Gen. of State of N.Y.*, 280 F.3d 87, 94–95 (2d Cir. 2001).

### A.    Unexhausted and Procedurally Defaulted Claims:  Grounds One, Three, Five, and Six

Four of Roque's claims are unexhausted and procedurally defaulted because they were not "fairly presented" on direct appeal and there is no longer an appropriate state court in which to raise them.  As Roque has not shown cause for this default, the claims are dismissed.

### i.    Fair Presentation

In his petition, Roque asserts in his first ground that he was deprived of the right to a fair trial because the evidence was legally insufficient to support the verdict.  (Pet. at 21.)  On appeal to the Appellate Division, however, he argued only that the verdict was against the weight of the evidence, and he cited no federal law and made no arguments referencing a federal constitutional right.  (Def.'s Appellate Division Br. at 33–44.)  Under New York State law, challenges to weight are distinct from challenges to sufficiency, and unlike sufficiency challenges, they do not implicate the United States Constitution.  *See, e.g.*, *Garrett v. Perlman*, 438 F. Supp. 2d 467, 470 (S.D.N.Y. 2006) ("Unlike a sufficiency of the evidence claim, which is based upon federal due process principles, a weight of the evidence claim is 'an error of state law, for which habeas review is not available.'" (quoting *Douglas v. Portuondo*, 232 F. Supp. 2d 106, 116 (S.D.N.Y. 2002))).  Accordingly, Roque's first claim was never fairly presented in state court.

In his third ground, Roque argues that he was deprived of the right to a fair trial because the combination of the prosecutor's inaccurate rendition of the acting in concert charge coupled with "the Court's charge on unanimity regarding the defendant's status as a princip[al] or an accomplice negated the proper function of the jury." (Pet. at 22.)  Before the Appellate Division,

however, he specifically declined to press this argument, choosing instead to argue that these things diluted the People's burden of proof. (Def.'s Appellate Division Br. at 73–75 & n.15.) Moreover, even were the Court to construe the petition as presenting the same argument raised on direct appeal, a challenge to the substance of a jury charge is not cognizable on habeas review unless the petitioner shows the charge "so infected the entire trial that the resulting conviction violates due process." *Felder v. Goord*, 564 F. Supp. 2d 201, 223 (S.D.N.Y. 2008) (quoting *Blazic v. Henderson*, 900 F.2d 534, 541 (2d Cir. 1990)). Roque's short, unelaborated claim falls short of making such a showing.

In his fifth ground, Roque argues the Appellate Division denied him due process when it applied a "non-existent standard" of review, concluding its decision, "The defendant's remaining contentions are either without merit or relate to harmless error." *Roque*, 902 N.Y.S.2d at 430. Although Roque did challenge this language in his motion for leave to appeal to the Court of Appeals, he never framed it as a federal due process claim or cited federal law. (Application at 38–44.) Instead, citing no law at all, he argued "there is no such standard for appellate review of a conviction" and therefore this portion of the Appellate Division's decision was entitled to "no weight." (*Id.* at 44.) To the extent Roque wishes to press this non-constitutional argument, his claim is not cognizable. *See, e.g.*, *Carvajal v. Artus*, 633 F.3d 95, 109 (2d Cir. 2011) ("It is well established that a federal habeas court does not sit to correct a misapplication of state law, unless such misapplication violates the Constitution, laws, or treaties of the United States." (alterations omitted) (quoting *Ponnapula v. Spitzer*, 297 F.3d 172, 182 (2d Cir. 2002))).

Finally, in his sixth ground, Roque asserts that he was deprived of the right to a fair trial when he was sentenced on facts found not by the jury. (Pet. at 23.) This claim also cannot be found in his brief to the Appellate Division.

21

None of the foregoing claims can be exhausted at this juncture. Roque's direct appeal expired when he declined to seek certiorari following denial of leave from the Court of Appeals, and state collateral proceedings pursuant to C.P.L. § 440 are unavailable to raise claims that could have been, but were not, raised on direct appeal. *See* N.Y. Crim. Proc. Law § 440.10(2)(c) ("[T]he court must deny a motion to vacate a judgment when . . . [a]lthough sufficient facts appear on the record of the proceedings underlying the judgment to have permitted, upon appeal from such judgment, adequate review of the [claim] raised upon the motion, no such appellate review or determination occurred owing to the defendant's unjustifiable failure to . . . raise such [claim]."). Accordingly, these claims are procedurally barred, and for the purposes of this petition, they are deemed exhausted. *See Ramirez*, 280 F.3d at 94 ("Even if a federal claim has not been presented to the highest state court or preserved in lower state courts under state law, it will be deemed exhausted if it is, as a result, then procedurally barred under state law." (citation omitted)); *see also Ortiz v. New York*, No. 12-CV-1116 (RJD), 2013 WL 1346249, at *10 (E.D.N.Y. Mar. 31, 2013) ("Petitioner claims that the evidence was legally insufficient . . . . Because petitioner failed to raise this claim on direct appeal or in his motion to vacate, the claim is unexhausted, but because petitioner cannot raise this on-the-record claim in a second 440 motion, the Court deems the claim exhausted but also procedurally barred.").

### ii.    Cause and Prejudice

Procedurally barred claims must be dismissed "unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." *Coleman*, 501 U.S. at 750 (1991); *see also Carvajal v. Artus*, 633 F.3d 95, 104 (2d Cir. 2011). As relevant here, ineffective assistance of counsel as defined in *Strickland* constitutes

cause. *Murray v. Carrier*, 477 U.S. 478, 488 (1986). And failure to consider claims of an actually innocent prisoner constitutes a fundamental miscarriage of justice. *Id.* at 496; *see also McQuiggin v. Perkins*, 569 U.S. 383, 386 (2013). To succeed on a claim of "gateway" actual innocence, "a petitioner must 'support his allegations of constitutional error with new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial.'" *Danielson v. Lee*, 715 F. App'x 45, 48–49 (2d Cir. 2017) (summary order) (quoting *Schlup v. Delo*, 513 U.S. 298, 324 (1995)).

Nowhere in his petition or reply brief does Roque attempt to show cause or prejudice for his failure to raise the foregoing claims on direct appeal. He does raise ineffective assistance of trial and appellate counsel claims, but, as explained below in this Order, these claims fail to satisfy the *Strickland* standard and thus cannot amount to cause. *See Murray*, 477 U.S. at 488 ("So long as a defendant is represented by counsel whose performance is not constitutionally ineffective . . . we discern no inequity in requiring him to bear the risk of attorney error that results in a procedural default.").

As for Roque's assertion of "gateway" actual innocence, it rests it upon conjecture only.[6] Despite the significant time he has spent researching and investigating his claims, Roque has not offered any new reliable evidence that his brother or anyone else committed the crime. Accordingly, grounds one, three, five, and six of the petition are dismissed. *See Gutierrez v. Capra*, No. 14-CV-6887 (KAM), 2019 WL 1508454, at *14 (E.D.N.Y. Apr. 5, 2019) ("As to cause and prejudice, petitioner offers no justification for his failure to raise these claims in the

---

[6] This appears in the fourth ground of his petition. It is not clear whether Roque asserts his innocence as a gateway through which to excuse procedural default, a freestanding claim to relief, or both. Given his *pro se* status, the Court construes Roque's argument as a gateway claim, as freestanding claims are not a recognized basis for granting habeas relief. *See McQuiggin*, 569 U.S. at 392 ("We have not resolved whether a prisoner may be entitled to habeas relief based on a freestanding claim of actual innocence.").

state courts, and nothing in the record indicates that his default was because of some objective

element external to the defense." (citations omitted)); *Ortiz*, 2013 WL 1346249, at *10

("[B]ecause petitioner has not shown or even advanced claims of cause and prejudice . . . federal

review of this claim is not authorized." (citations omitted)).

**B.     Unexhausted and Not Procedurally Defaulted Claim:  Ineffective Assistance
         of Appellate Counsel**

Roque references his right to "effective appellate counsel" in the introductory sentence of

his seventh ground.  (Pet. at 24.)  In view of Roque's *pro se* status, the Court construes this as

sufficient to raise a claim for ineffective assistance of appellate counsel.  The claim, however, is

unexhausted because, as Roque acknowledged in his petition, it should first be raised in a motion

for a writ of error *coram nobis*.  *See, e.g.*, *Pitre v. Griffin*, No. 16-CV-6258 (BMC), 2016 WL

7442653, at *1 (E.D.N.Y. Dec. 26, 2016) (stating that an ineffective assistance of appellate

counsel claim not raised in a *coram nobis* motion is unexhausted).  Although Roque filed such a

motion with this intent, he subsequently withdrew it.  (3/28/12 Letter at 70; Second Mot. to Stay

at 2.)  As there is no time limit on renewing or filing a new *coram nobis* motion, this claim is not

procedurally barred, and it renders Roque's petition mixed.  *See Rose v. Lundy*, 455 U.S. 509,

516 (1982).

When confronted with a mixed petition, a court "may: (1) dismiss the petition in its

entirety without prejudice; (2) deny the entire petition on the merits; (3) allow the petitioner to

delete the unexhausted claims and proceed with his exhausted claims; or (4) in limited

circumstances, stay the petition to allow petitioner to exhaust his unexhausted claims."  *Wesley-*

*Rosa v. Kaplan*, 274 F. Supp. 3d 126, 128 (E.D.N.Y. 2017) (citation omitted); *see also Rhines v.*

*Weber*, 544 U.S. 269, 278 (2005).  The Court has already determined that a stay is inappropriate

24

and it has allowed Roque ample time to amend his petition to delete this claim, which he has not done.  (*See* 3/12/2013 Mem. & Order at 4–5.)  Accordingly, the Court will exercise its discretion to decide and deny the claim on the merits.  *See* 28 U.S.C. § 2254(b)(2) ("An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State.").

This requires little analysis because, as just noted, the claim is wholly unelaborated.  It appears in a single sentence in the petition which asserts that ground seven "contains both a defendant's constitutional right to effective trial counsel and his right to effective appellate counsel."  (Pet. at 24.)  This is plainly insufficient.  *See* Rules Governing Section 2254 and 2255 Cases, Rule 2(c) ("The petition must . . . state the facts supporting each ground.").  Accordingly, Roque's ineffective assistance of appellate counsel claim is denied.  *See, e.g.*, *Arriola v. McKinney*, No. 99-CV-5742 (RWS), 2000 WL 271668, at *7 (S.D.N.Y. Mar. 13, 2000) ("There being no support in the record for [petitioner's] wholly conclusory claims of ineffective assistance of trial and appellate counsel given the legal standard set forth above, these claims are denied.").

### C.    Exhausted Claims:  Grounds Two and Seven

Roque's ineffective assistance of trial counsel claim appears in both his second and seventh grounds for relief.  It is based on three broad types of allegedly deficient performance: defense counsel's general "ineptitude" and "lack of understanding of the key issues," his "confusing" and ineffective summation, and his failure to object to prosecutorial misconduct throughout the trial.  (Pet. at 21, 24–25.)  This claim is based solely on the trial record, and it was presented almost exactly the same way on direct appeal, decided by the Appellate Division, and

subsequently repeated in the motion to the Court of Appeals.[7]  It is therefore exhausted and not procedurally defaulted for the purposes of review on the merits under AEDPA.  *See Galdamez*, 394 F.3d at 47.

Roque's prosecutorial misconduct claim also appears in his second ground.  He asserts that the prosecutor's conduct throughout the trial, particularly the improper cross-examination of defense witnesses and prejudicial summation, deprived him of his right to a fair trial.  (Pet. at 21.)  Roque fairly presented these record-based arguments to the Appellate Division and in his motion for leave to appeal to the Court of Appeals, and accordingly, this claim is exhausted.  *See Galdamez*, 394 F.3d at 47.  Nevertheless, Respondent's opposition, although it does not contest this conclusion, maintains that the claim is procedurally barred because the Appellate Division's rejection of it rested on an adequate and independent state ground, namely, that defense counsel failed to lodge a contemporaneous objection pursuant to C.P.L. § 470.05(2).  (Resp't's Mem. at 44–47.)  The Court disagrees.

First, the Appellate Division only explicitly applied the contemporaneous objection rule to the portion of the fair trial claim based on the prosecutor's alleged misconduct during summation.  *Roque*, 902 N.Y.S.2d at 430.  As for the substantial portion of Roque's fair trial claim that rested upon the prosecutor's purported misconduct throughout the rest of the trial, the Appellate Division was silent.  Presumably, therefore, it dismissed this claim on the merits in its catch-all conclusion:  "The defendant's remaining contentions either are without merit or relate

---

[7] As Respondent points out in its brief, Roque's petition adds a single allegation that was not presented on direct appeal:  that defense counsel failed to review *Rosario* material in preparation for specific cross examinations.  (Pet. at 25.)  To the extent Roque's ineffective assistance claim rests on this allegation, the claim is unexhausted.  The Court does not, however, interpret Roque's ineffective assistance claim this way.  The *Rosario* allegation is one among dozens offered in support of the broader claim that defense counsel was generally inept.  Like the other allegations in this category, it is largely unelaborated and lacking relevant support.  Whether it is counted among this group of allegations or not makes no difference, because – as is explained in detail in part II, *infra* – they are collectively insufficient to support a claim of ineffective assistance.

to harmless error." *Id.* This disposition does not bar review of at least the pre-summation

portion of Roque's fair trial claim. *See Galdamez*, 394 F.3d at 77 ("Generally, procedural

default for failure to comply with a state procedural requirement bars habeas review only when

the state court rendering the judgment 'clearly and expressly states that its judgment rests on a

state procedural bar.'" (quoting *Glenn v. Bartlett*, 98 F.3d 721, 724 (2d Cir. 1996))).

Second, it is not evident whether the Appellate Division's application of the

contemporaneous objection rule was "adequate" and thus sufficient to preclude habeas review of

even just the claim as based on the summation. Generally, a procedural bar is "adequate" if it is

"firmly established and regularly followed by the state in question." *Pierotti*, 834 F.3d at 177

(internal quotation marks omitted) (citation omitted). However, even a firmly established and

regularly followed rule may be inadequate if it is applied in an "exorbitant" way to a defendant's

claims. *Id.* (quoting *Lee v. Kemna*, 534 U.S. 362, 376 (2002)). As relevant here, one guidepost

for evaluating whether application of a procedural rule is exorbitant is "whether petitioner had

'substantially complied' with the rule given 'the realities of trial.'" *Cotto v. Herbert*, 331 F.3d

217, 240 (2d Cir. 2003) (quoting *Lee*, 534 U.S. at 382).

There is no question that New York's contemporaneous objection rule is firmly

established and regularly followed. *See, e.g.*, *Downs v. Lape*, 657 F.3d 97, 104 (2d Cir. 2011)

("Accordingly, we have held repeatedly that the contemporaneous objection rule is a firmly

established and regularly followed New York procedural rule." (citations omitted)). There is

some question, however, whether its application in this case was exorbitant because the trial

record reveals that defense counsel did, in fact, comply with the rule by objecting numerous

times throughout the People's summation. His objections covered a range of conduct, from the

prosecutor's reference to perjury to his invocation of "truth," to his attempt to instruct the jury

regarding accessorial liability.  (Trial Tr. at 1559, 1580, 1585, 1591, 1596.)  Although defense

counsel did not object to every turn of phrase subsequently challenged by Roque on appeal, he

preserved an argument that the summation was unduly prejudicial.  Accordingly, in an

abundance of caution, the Court will review Roque's fair trial claim on the merits.

## III.    AEDPA Review

Pursuant to AEDPA,

>    An application for a writ of habeas corpus on behalf of a
> person in custody pursuant to the judgment of a State court shall
> not be granted with respect to any claim that was adjudicated on
> the merits in State court proceedings unless the adjudication of the
> claim–
>
>    (1)    resulted in a decision that was contrary to, or involved an
> unreasonable application of, clearly established Federal law, as
> determined by the Supreme Court of the United States; or
>
>    (2)    resulted in a decision that was based on an unreasonable
> determination of the facts in light of the evidence presented in the
> State court proceeding.

28 U.S.C. § 2254(d); *see also Cornell v. Kirkpatrick*, 665 F.3d 369, 374 (2d Cir. 2011).  This

standard is "'difficult to meet,' because the purpose of AEDPA is to ensure that federal habeas

relief functions as a 'guard against extreme malfunctions in the state criminal justice systems,'

and not as a means of error correction."  *Greene v. Fisher*, 565 U.S. 34, 38 (2011) (citing

*Harrington v. Richter*, 562 U.S. 86, 102 (2011)).

Application of the standard "proceeds in two steps."  *Jackson v. Conway*, 763 F.3d 115,

133–34 (2d Cir. 2014).  "The first is to identify the governing 'clearly established Federal law.'"

*Id.* (citation omitted).  "The second asks whether, in the context of the petitioner's case, the state

court's decision was contrary to or an unreasonable application of that clearly established

precedent."  *Id.* (citing *Yarborough v. Alvarado*, 541 U.S. 652, 663 (2004); *Williams v. Taylor*,

529 U.S. 362, 412 (2000)).  A state court's decision is "contrary to" clearly established precedent when it "reached a conclusion of law that directly contradicts" a Supreme Court holding, or when it "arrived at a result opposite to that reached by the Supreme Court when presented with" materially indistinguishable facts.  *Id.* at 134; *Evans v. Fischer*, 712 F.3d 125, 132 (2d Cir. 2013).  A state court's decision is an "unreasonable application" of clearly established precedent when it "identifies the correct governing legal principle but unreasonably applies that principle to the facts of the case before it."  *Evans*, 712 F.3d at 132 (internal quotation marks omitted) (quoting *Williams*, 529 U.S. at 413).  "Unreasonable" in this context does not mean "incorrect" or "erroneous" – "a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established law erroneously or incorrectly."  *Renico v. Lett*, 559 U.S. 766, 773 (2010) (internal quotation marks omitted) (citation omitted).  Rather, to warrant granting the writ, the state court's decision must be "objectively unreasonable," or imbued with "some increment of incorrectness beyond error."  *Evans*, 712 F.3d at 133 (internal quotation marks omitted).

For the reasons explained next, Roque fails to demonstrate that the Appellate Division's judgment rejecting his fair trial and ineffective assistance of counsel claims was contrary to or an unreasonable application of clearly established federal law.

## A.    Prosecutorial Misconduct

A prosecutor's conduct and commentary violates the constitution only if it "so infected the trial with unfairness as to make the resulting conviction a denial of due process."  *Parker v. Matthews*, 567 U.S. 37, 45 (2012) (quoting *Darden v. Wainwright*, 477 U.S. 168, 181 (1986)).  "The Supreme Court has emphasized that this 'standard is a very general one, leaving courts

more leeway . . . in reaching outcomes in case-by-case determinations.'" *Haigler v. Conway*, 595 F. App'x 77, 78 (2d Cir. 2015) (summary order) (quoting *Parker*, 567 U.S. at 48).

Applying this general standard to habeas cases, the Second Circuit has distilled several "clearly established" principles of law governing prosecutorial misconduct claims. They are:

> [O]n federal habeas review, the relevant standard is the narrow one of due process, and not the broad exercise of supervisory power. Thus, while the State has a duty to refrain from improper methods calculated to produce a wrongful conviction, such methods will warrant habeas relief only if they so infected the trial with unfairness as to make the resulting conviction a denial of due process. The habeas court must consider the record as a whole when making this determination, because even a prosecutor's inappropriate or erroneous comments or conduct may not be sufficient to undermine the fairness of the proceedings when viewed in context. When reviewing such claims under the unreasonable application prong of § 2254(d)(1), the habeas court must keep in mind that this standard is a very general one that affords courts leeway in reaching outcomes in case-by-case determinations.

*Jackson*, 763 F.3d at 146 (internal quotation marks omitted) (quoting *Darden*, 477 U.S. at 180, 182; *United States v. Young*, 470 U.S. 1, 16–17 (1985); *Donnelly v. DeChristoforo*, 416 U.S. 637, 642–43, 647–48 (1974); and *Berger v. United States*, 295 U.S. 78, 88 (1935)).

Here, although Roque's petition does not identify any specific instances of prosecutorial misconduct, his Appellate Division brief does. Cognizant of Roque's *pro se* status, the Court will assume – as Respondent does in its opposition – that Roque still presses the same arguments raised in that brief. *Cf. Nowakowski v. New York*, 835 F.3d 210, 215 (2d Cir. 2016) (construing petitioners "appellate briefs and submissions liberally and interpret[ing] them to raise the strongest arguments they suggest" (citations omitted)). Viewing the record as a whole, and evaluating each of these arguments, the Court cannot conclude that the Appellate Division's rejection of Roque's fair trial claim was contrary to, or an unreasonable application of, Supreme Court precedent.

Roque's argument is that he was deprived of a fair trial by the cumulative effect of the prosecutor's occasionally inappropriate remarks during cross-examination and handful of potentially improper comments during summation.  The most notable of these are several sarcastic exchanges with witnesses; likening Roque to Jeffrey Dahmer; invoking "the truth" in an effort to bolster or undermine witness credibility; attacking Roque's story as "invented" and "sloppy," among other things; and responding to attacks on the credibility of prosecution witnesses by suggesting the improbability that they would indulge in perjury.  None of these, viewed together and in the context of an otherwise fair three-week trial at which there was substantial evidence of guilt, "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Jackson*, 763 F.3d at 146 (quoting *Darden*, 477 U.S. at 180).

Moreover, the majority of these remarks were minimally prejudicial, if at all.  The sarcastic commentary comprised four isolated incidents in a long trial, and an objection was sustained each time.  *See Dinh v. Rock*, No. 11-CV-2640 (JG), 2011 WL 6329699, at *5 & n.3 (E.D.N.Y. Dec. 16, 2011) (finding cross examination that "occasionally crossed the line" and involved sarcastic questions that were objected to did not deprive the defendant of a fair trial); *Hogan v. Ercole*, No. 05-CV-5860 (RRM), 2011 WL 3882822, at *12 (E.D.N.Y. Sept. 2, 2011) ("The prosecutor's comments, and even use of sarcasm, simply did not rise to the level of egregiousness required to overturn the verdict.").  The Jeffrey Dahmer comment, while also inappropriate, did not deprive Roque of a fair trial.  Coupled with the few other arguably prejudicial parts of the summation, it simply does not amount to a due process violation in the context of this trial.  *See Jackson*, 763 F.3d at 146 (admonishing habeas courts to "consider the

record as a whole" and evaluate the prosecutor's "inappropriate or erroneous comments or conduct . . . in context" (citations omitted)).

The prosecutor's invocations of "the truth," meanwhile, were not prejudicial.  References to truth are frequently condemned when they come in the form of statements of the prosecutor's belief, such as, "I'm here to tell you that [the witness's] testimony . . . is truthful." *United States v. Modica*, 663 F.2d 1173, 1179 (2d Cir. 1981).  "The essential vice of a statement of personal belief by the prosecutor is the implication that the prosecutor's opinion is based on matters uncovered by the Government's investigation but not presented in the evidence at trial." *United States v. Melendez*, 57 F.3d 238, 240–41 (2d Cir. 1995).  Here, however, the prosecutor's statements expressed no belief.  Every time he said, "There is a truth," it came as part of a longer exhortation to the jury about their duty to find that truth.  (Trial Tr. at 1556, 1570, 1597.)  And every time he characterized the testimony of witnesses as either having or not having "the ring of truth," it came as part of a challenge to the jury to think carefully about particular testimony.  (*Id.* at 1558, 1570, 1577).  Such statements are generally appropriate.  *See United States v. Nersesian*, 824 F.2d 1294, 1328 (2d Cir. 1987) ("It is obligatory for prosecutors to find careful ways of inviting jurors to consider drawing argued inferences and conclusions and yet to avoid giving the impression that they are conveying their personal views to the jurors.").  And any prejudice they may have created was dissipated by the trial court's repeated warning to jurors throughout the summations, "Your recollection of the evidence will control." *See, e.g.*, *Darden*, 477 U.S. at 182 ("The trial court instructed the jurors several times that their decision was to be made on the basis of the evidence alone, and that the arguments of counsel were not evidence.").

Finally, there are the prosecutor's several remarks on credibility.  In one category of these, he derided Roque's testimony – and the defense's theory of the case – as "ridiculous,"

"sloppy," "invented," and marked by convenient "blindness and amnesia." (*Id.* at 1557, 1566,

1579, 1581.) Although colorful, these remarks are not prejudicial. The Second Circuit has "not

found comparable language to constitute prejudicial commentary." *Nastri*, 647 F. App'x at 53

(collecting cases); *see, e.g.*, *United States v. Millar*, 79 F.3d 338, 343–44 (2d Cir. 1996) ("hog

wash" and "smoke screen"); *United States v. Jaswal*, 47 F.3d 539, 544 (2d Cir. 1995) ("fairy

tale").

In the other category, there are the prosecutor's two attempts to bolster the prosecution's

witnesses' credibility by arguing that it is unlikely they "came in here, committed the crime of

perjury, [and] risked their careers." (Trial Tr. at 1559, 1595.) Although such statements risk

shifting the burden of proof, they have been deemed permissible where, as here, they are

responsive to the defense counsel's summation and not otherwise significantly prejudicial within

the context of the trial as a whole. *See, e.g.*, *Darden*, 477 U.S. at 182 ("Much of the

objectionable content was invited by or was responsive to the opening summation of the

defense."). *Compare United States v. Richter*, 826 F.2d 206, 209 (2d Cir. 1987) (collecting

cases) (reversing and remanding a conviction where the prosecutor repeatedly asked the

defendant to testify as to the credibility of a law enforcement witness, then in summation

misquoted the defendant's testimony and stated that to believe the defendant would necessarily

mean believing the law-enforcement witness committed perjury), *with United States v. Durrani*,

835 F.2d 410, 424 (2d Cir. 1987) (distinguishing *Richter* on the grounds that the prosecutor's

comment during summation "was . . . focused on the important question of [the defendant's]

credibility" and was unaccompanied by earlier prejudicial questioning of witnesses). Moreover,

whatever prejudice the comments caused was minimized by the Court's clear instructions to the

jury that the burden of proof beyond a reasonable doubt rested with the People. (*Id.* at 1601–04,

1607, 1622, 1626, 1655); *see also, e.g.*, *United States v. George*, No. 11-CR-250 (DLI), 2012

WL 2564373, at *20 (E.D.N.Y. June 29, 2012) ("Thus, assuming *arguendo* that the AUSA's

comments were prejudicial, there was no plain error or flagrant abuse because the court's

multiple jury instructions as well as the parties' reiteration of the government's burden during

summations eliminated any danger that the burden might have been shifted." (citation omitted)).

Over the course of the three-week trial, the prosecution called fourteen witnesses and

presented numerous pieces of evidence. (Trial Tr. at 1675–76.)  Three eyewitnesses saw Roque

repeatedly stab the victim.  One described him holding a knife.  (*Id.* at 441–42.)  Minutes later,

police officers recovered a knife from Roque with the victim's blood on it.  (*Id.* at 157, 159, 236,

660, 966–97.)  Unable to controvert the physical evidence, the defense attacked the

eyewitnesses' story and offered a competing one, ultimately calling thirteen witnesses of its own

to support Roque's version of events, buttress his credibility, or both.  (*Id.* at 1675–76.)  At the

conclusion of the evidence, both parties gave extended and vigorous summations.  Viewing this

record as a whole, the Court cannot say that the prosecutor's few potentially prejudicial

comments "so infected the trial with unfairness" as to make Roque's conviction a denial of due

process.[8]  *See Jackson*, 763 F.3d at 146; *see also Darden*, 477 U.S. at 182 ("The weight of the

---

[8] Roque's Appellate Division brief purports to identify several other instances of prosecutorial misconduct, but the Court finds no error or even irregularity with any of them.  For example, Roque alleges the prosecutor used "prejudicial language" and "bickered" with defense counsel.  The supposedly "prejudicial language," however, turns out to be words such as "claim" and phrases such as "you are saying."  (Def.'s Appellate Division Br. at 47–48.)  The "bickering," meanwhile, is revealed to be a small handful of instances in which one or the other attorney spoke out of turn during legal argument.  Unsurprisingly, Roque cites no authority condemning such "trifles."  *See Taus v. Senkowski*, 293 F. Supp. 2d 238, 252 (E.D.N.Y. 2003) ("The allegedly improper remarks by the prosecutor are trifles, such as the 'constant' reference to petitioner's behavior toward the complainants as 'seduction.'"), *aff'd*, 134 F. App'x 468 (2d Cir. 2005).

For another example, Roque takes issue with various of the prosecutor's lines of questioning during his own cross-examination.  The offending questions were aimed at identifying inconsistencies between the Roque brothers' accounts of the evening in question, and questions about Roque's prior conduct – such as declaring bankruptcy in 2002 – designed to rebut the defense's evidence of Roque's good character.  (Def.'s Appellate Division Br. at 50.)  Neither of these is inappropriate, and, indeed, under New York law, each was proper.  *See, e.g.*, *People v. Rios*, 560 N.Y.S.2d 901, 902 (2d. Dep't 1990) ("As the defendant placed his character in issue, the trial court did not err by ruling that the defendant had 'opened the door' to cross-examination as to the underlying facts

34

evidence against petitioner was heavy; the 'overwhelming eyewitness and circumstantial evidence to support a finding of guilt on all charges[]' reduced the likelihood that the jury's decision was influenced by argument." (citation omitted)).  There is certainly no basis on which to conclude that the Appellate Division unreasonably applied the law in reaching this conclusion.  *See* 28 U.S.C. § 2254(d).  Accordingly, Roque's fair trial claim is denied.

> **B.    Ineffective Assistance of Trial Counsel**

In *Strickland*, 466 U.S. 668, the Supreme Court established a two-pronged test for deciding ineffective assistance claims.  To satisfy the first prong, a petitioner "must show that counsel's representation fell below an objective standard of reasonableness."  *Id.* at 688.  In evaluating reasonableness, courts "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'"  *Id.* at 689 (citation omitted).  To satisfy the second prong, a petitioner must demonstrate "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  *Id.* at 694.  The Supreme Court defines "reasonable probability" as "a probability sufficient to undermine confidence in the outcome."  *Id.*  "The level of prejudice the defendant need demonstrate lies between prejudice that 'had some conceivable effect' and prejudice that 'more likely than not altered the outcome in the case.'"  *Lindstadt v. Keane*, 239 F.3d 191, 204 (2d Cir. 2001) (quoting *Strickland*, 466 U.S. at 693).  "Because the test is conjunctive, a habeas petitioner's failure to satisfy either prong requires that the challenge to the conviction be rejected."  *Rosario v. Ercole*,

---

of two of his prior convictions to dispute his assertion that he was a nonviolent man.").  *See generally People v. Sandoval*, 314 N.E.2d 413, 416 (N.Y. 1974).

582 F. Supp. 2d 541, 575 (S.D.N.Y. 2008) (citing *Strickland*, 466 U.S. at 697), *aff'd*, 601 F.3d 118 (2d Cir. 2010).

The *Strickland* standard is clearly established federal law. *See, e.g.*, *Aparicio v. Artuz*, 269 F.3d 78, 95 (2d Cir. 2001). In evaluating ineffective assistance claims on habeas review, courts are doubly bound to be deferential – first to the state court's determination pursuant to § 2254(d), and then to the defense counsel's choices at trial pursuant to *Strickland*. *See Harrington*, 562 U.S. at 105; *Lindh v. Murphy*, 521 U.S. 320, 333, n.7 (1997); *Strickland*, 466 U.S. at 689. Thus, "[w]hen § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Harrington*, 562 U.S. at 105.

Here, there is more than a reasonable argument that defense counsel satisfied *Strickland*. Roque assigns three broad categories of error to his attorney: ineptitude and lack of professionalism, delivering an ineffective summation, and failing to object to the prosecutorial misconduct detailed in the fair trial claim. None of these constitutes ineffective assistance.[9] The first two are vaguely alleged and without support, and the third is belied by the fact, explained at length above, that there was little objectionable prosecutorial conduct.

First, without citing relevant support in the record, Roque claims that counsel was generally inept – that is, he "acted unprofessionally," "did not manifest that he understood the case," "did not appear to understand the rules of evidence," and "engaged in juvenile behavior with the prosecutor in front of the jury." [10] (Def.'s Appellate Division Br. at 67–69; Pet. at 21,

---

[9] As with his fair trial claim, Roque's specific allegations are more thoroughly alleged in his Appellate Division brief, which Respondent has treated – and the Court now treats – as incorporated into his petition.

[10] The very few times Roque cites the record at all in support of this claim, it does not support his argument. For example, he contends defense counsel's incompetence was demonstrated by his seeking "a ruling that would have prejudiced his client." (Def.'s Appellate Division Br. at 68–69.) The ruling in question would have entailed receiving permission to question a NYPD witness about Roque's willingness to have his palm print taken. (*See id.*;

24.)  Merely alleging such general incompetence falls far short of meeting the petitioner's burden under *Strickland*.  *See, e.g.*, *Slevin v. United States*, No. 98-CV-0904 (PKL), 1999 WL 549010 at *5 (S.D.N.Y. July 28, 1999) ("Petitioner's conclusory allegations that counsel evinced 'a general lack of preparation' do not demonstrate that absent the alleged errors, the outcome of the trial would have been different.  Petitioner has not elaborated on how counsel's alleged general lack of preparation prejudiced the outcome of his trial.  Accordingly, such purported lack of preparation cannot be deemed ineffective assistance of counsel."), *aff'd*, 234 F.3d 1263 (2d Cir. 2000); *Sirotnikov v. United States*, No. 97-CV-3295 (JFK), 1998 WL 770557, at *4 (S.D.N.Y. Nov. 2, 1998) ("Petitioner's naked assertion that his trial counsel 'failed to adequately perform pretrial research and investigation,' does not establish ineffective assistance of counsel."); *Vasquez v. United States*, No. 96-CV-2104 (PKL), 1997 WL 148812, at *1-2 (S.D.N.Y. Mar. 28, 1997) ("[P]etitioner's allegations with regard to alleged counsel errors in pre-trial preparation and investigation and trial advocacy are 'vague, conclusory, and unsupported by citation to the record, any affidavit, or any other source,' and, accordingly, . . . '[t]he vague and unsubstantiated nature of the claims' defeated petitioner's claim of ineffective assistance of counsel.").  And to the extent the Court can find record support for any of these allegations – for example, defense counsel's quip that the prosecutor must have been "confused" about his own good looks – there is no reason to conclude Roque suffered prejudice therefrom.

Second, Roque alleges counsel gave an "unconvincing summation," "rambl[ing] along for almost 50 pages [of transcript], apologizing for not remembering all the details and focusing

---

Trial Tr. at 487–88.)  Defense counsel believed the witness's testimony would show Roque volunteered for the printing.  The prosecutor, however, stated that it would show the opposite – that the print was compulsory, and that Roque only consented after being informed as much.  (Trial. Tr. at 487–88.)  After hearing from both parties, the trial court did not permit the questioning, reasoning that he did not "want to open the door to any *potential* prejudice."  (*Id.* at 488 (emphasis added).)  Whether or not this testimony would have, in fact, prejudiced Roque remains unknown.

on irrelevant facts in the case." (Def.'s Appellate Division Br. at 66, 68; Pet. at 25.) In fact, the defense summation appears eminently reasonable: it began pointing to evidence of Roque's good character; turned to the weakness's in the People's case, such as the lack of the victim's blood anywhere on Roque, or vice versa; and concluded by focusing on the most important contested issue, the credibility of the People's eyewitnesses. (Trial Tr. at 1507–52.) To the extent Roque deems this summation so "unfocused" as to be objectively unreasonable, the Court disagrees. To the extent he believes it to be "unconvincing" in some other way, he has failed to substantiate his claim. *See, e.g.*, *Bethea*, 2016 WL 258639, at *24 ("Without identifying any subject that counsel neglected to explore, or explaining how a lengthier summation would have altered the outcome, Petitioner fails to demonstrate 'a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" (quoting *Strickland*, 466 U.S. at 694)).

Third, Roque contends defense counsel was ineffective because he failed to object to the prosecutor's improper remarks throughout the trial. (Def.'s Appellate Division Br. at 47–49, 58–65, 68; Pet. at 21, 24.) As general matter, "[e]ven where an objection would have been sustained, an attorney is not required to raise an objection in order to render effective assistance." *Nowicki v. Cunningham*, No. 09-CV-8476 (KMK) (GAY), 2014 WL 5462475, at *25 (S.D.N.Y. Oct. 27, 2014) (collecting cases), *aff'd*, 669 F. App'x 52 (2d Cir. 2016). "[T]he relevant question under *Strickland*" is not whether the motion or objection "would have succeeded," but instead whether "no competent attorney would think a [motion or objection] would have failed." *Premo v. Moore*, 562 U.S. 115, 124 (2011). Thus, "[i]n considering the reasonableness of counsel's failure to object, [courts] 'indulge a strong presumption that counsel's conduct falls within the

wide range of reasonable professional assistance.'" *Cox v. Donnelly*, 387 F.3d 193, 198 (2d Cir. 2004) (quoting *Strickland*, 466 U.S. at 689).

Here, the purported missed objections Roque identifies fall far short of overcoming that presumption. Many of them are not really missed objections at all. Counsel did object, for example, to the sarcastic questioning of Massoud and Luttinger, (Trial Tr. at 876, 1445), the aggressive questioning of Roque, (*id.* at 1268), and the reference in summation to perjury, (*id.* at 1559). Those few comments that did escape objection were not, as explained at length above, significantly prejudicial. And it may have been entirely reasonable trial strategy for defense counsel to allow them to pass unchallenged. *See Strickland*, 466 U.S. at 688. Roque makes much of the Jeffrey Dahmer remark, for example, but it is possible his attorney deemed it more damaging to highlight than to leave unchallenged. *Cf., e.g.*, *Morrison v. McCray*, No. 09-CV-126 (MAT), 2012 WL 1085306, at *6 (W.D.N.Y. Mar. 21, 2011) (denying an ineffective-assistance claim where it was "possible that counsel made a reasonable strategic decision not to object to [a witness's] statement to avoid highlighting it to the jury"); *Charles v. Fischer*, 516 F. Supp. 2d 210, 217 (E.D.N.Y. 2007) (noting that "an attorney's failure to object generally is considered a strategic decision," and finding that it was "possible that trial counsel did not want to draw attention to the testimony"). In any event, it is not for this Court to second-guess defense counsel's decisions in this respect. *See United Slates v. Luciano*, 158 F.3d 655, 660 (2d Cir. 1998) ("[T]he conduct of examination and cross-examination is entrusted to the judgment of the lawyer, and an appellate court on a cold record should not second-guess such decisions unless there is no strategic or tactical justification for the course taken.").

For the foregoing reasons, the Court finds no support for Roque's contention that his attorney acted in an objectively unreasonable manner and, in doing so, altered the outcome of the

trial.  *See Strickland* 466 U.S. at 688, 694.  Nor is the Court persuaded that the Appellate

Division unreasonably applied the law in reaching this conclusion itself.  *See* 28 U.S.C. §

2254(d).  Accordingly, Roque's fair trial claim is denied.

## CONCLUSION

Roque's petition (Doc. No. 1) is dismissed with prejudice.  Because Roque has not made

a substantial showing of the denial of any constitutional right, no certificate of appealability will

issue.  *See* 28 U.S.C. § 2253; *see also Lucidore v. N.Y. State Div. of Parole*, 209 F.3d 107, 112–

13 (2d Cir. 2000).  The Clerk of the Court is directed to mail a copy of this Order and the

accompanying judgment to the *pro se* petitioner, note the mailing on the docket, and close the

case.

SO ORDERED.

Dated:  Brooklyn, New York  
       September 30, 2019

*Roslynn R. Mauskopf*
_____  
ROSLYNN R. MAUSKOPF  
United States District Judge